VAN ORMAN *v.* LAKE SHORE AND MICHIGAN SOUTHERN RAILWAY CO.

1. APPEAL AND ERROR—REVIEW—QUESTION OF FACT—LIABILITY OF JOINT DEFENDANTS.

    Where, in an action against two railroad companies for injuries to a passenger in a collision at a crossing, there is evidence of negligence on the part of both companies, and the jury were not asked to determine whether one of the defendants was guilty and the other not, a general verdict for the plaintiff will be sustained as against both defendants.

2. CARRIERS—RAILROADS—INJURIES TO PASSENGER—COLLISION AT CROSSING—NEGLIGENCE—EVIDENCE—SUFFICIENCY.

    In an action against two railroad companies for injuries to a passenger in a collision at a crossing, evidence examined, and *held*, sufficient to sustain a verdict against both companies.

3. SAME — CROSSING RAILROADS — CARE REQUIRED — MECHANICAL DEVICES—ADOPTION—EFFECT.

    It is the duty of railroad companies and their trainmen to take all possible precautions at railroad crossings to protect passengers from injury from collisions and this obligation is not lessened by the adoption, compulsorily or voluntarily, of mechanical devices tending to obviate such collisions.

4. SAME—NEGLIGENCE—RAILROAD TRACK AS WARNING OF DANGER.

    A railroad track is just as much a warning of danger to a train

approaching on another road as it is to a traveler upon the highway, and it is the duty of the trainmen to watch for passing trains, and, if they see danger, to use every precaution to protect their passengers by stopping their own train if it is possible to do so in time to avoid a collision.

5. Same—Negligence of Joint Employé.

   In an action against two railroad companies for injuries to a passenger in a collision at a crossing, evidence examined, and *held*, sufficient to go to the jury on the question of the negligence of the towerman in charge of the interlocker, a joint employé of both companies.

6. Same—Evidence—Order of Railroad Commissioner—Admissibility.

   Error is not assignable by one of the companies on the refusal of the court to permit it to read to the jury the order of the railroad commissioner approving the interlocker and regulating the speed of trains over it, against objection by counsel for the other company whose train was exceeding the speed limit, the evidence being conclusive that both companies customarily ignored the order, and the liability of the complaining company being predicated upon the negligence of its engineer in failing to discover the approaching train on the other road.

7. Same—Duty at Crossing—Freight Trains.

   Operatives of a freight train are under obligation to use as high a degree of care in approaching a railroad crossing as are those in charge of a passenger train, being as likely to collide with a passenger train as with another freight train, and human life being at stake in either instance.

8. Appeal and Error—Review—Question of Fact—Excessiveness of Damages.

   A verdict for plaintiff in a personal injury case will not be set aside as excessive where the testimony bearing upon the question of damages is not all before the court, there is evidence of permanent disability and great suffering, and a motion for new trial upon the same ground has been denied by the trial court.

Error to Lenawee; Chester, J. Submitted February 26, 1908. (Docket No. 158.) Decided March 31, 1908.

Case by Clayton M. Van Orman against the Lake Shore & Michigan Southern Railway Company and the

Wabash Railroad Company for personal injuries. There was judgment for plaintiff, and defendants bring error. Affirmed.

*Herbert R. Clark,* for appellant Lake Shore & Michigan Southern Railway Co.

*Smith, Baldwin & Alexander,* for appellant Wabash Railroad Co.

*Charles E. Townsend* and *Bird & Sampson,* for appellee.

The defendants' roads cross each other at right angles at Raisin Center, Lenawee county,—the Lake Shore running north and south and the Wabash east and west. On the night in question the Lake Shore was going north and the Wabash going west. The Wabash train consisted of 19 loaded freight cars and 10 empties, drawn by a 100-ton engine. The Lake Shore was a passenger train, consisting of a combination baggage and express car, a combination mail and smoker and two coaches, drawn by a 50-ton engine. The crossing was a flag station, and the Lake Shore was running from 3 to 5 miles an hour and was intending to stop. The freight train was running at a speed of 22 miles an hour, or more.

Plaintiff was a passenger on the Lake Shore road and was in the smoking car. He saw the light of the Wabash engine and it seemed to him as though it was coming direct towards the car in which he was. He attempted to move in order to avoid danger, and just as he got into the aisle the impact came, he was thrown onto the back of a seat, hit by flying debris and seriously injured.

There was a standard interlocking plant at this crossing which is conceded to have been in good condition at the time. This plant had been approved by the railroad commissioner, and by the order of the commissioner freight trains were allowed to pass the crossing at a speed of 8 miles an hour, and passenger trains at 12. There is evi-

dence that the Wabash train was derailed at the derailer located 300 feet from the crossing, and that it passed over the ties and frozen ground until it reached the Lake Shore track, where it was struck by the Lake Shore engine between the cab and the rear of the tender. None of the cars of the Lake Shore were derailed except the front end of the baggage car. The Lake Shore engine, after the accident, lay partly on its side parallel to the Wabash track. Both the engineer and fireman of the Lake Shore were killed.

Plaintiff sued both roads, claiming that each was guilty of negligence,—the Wabash through its engineer's failure to observe the signals that the plant was at block against him, and the Lake Shore through its engineer's failure to keep proper watch for the Wabash train and avoid the accident by stopping before the intersection had been reached.

Upon the trial it was developed that the Wabash claimed that the signals were first set by the towerman for a clear track to its train. If this was so it must follow that he changed the signals and set the interlocker for the Lake Shore. Plaintiff was then permitted to amend his declaration alleging a third ground of negligence, to wit: The negligence of the towerman in changing the signals, claiming that the towerman was the agent of both roads, and that both were jointly and severally liable for his negligence. A general verdict was rendered against both defendants.

GRANT, C. J. (*after stating the facts*). 1. There is no evidence that this interlocking plant was not in good condition. If it was in good condition it could not possibly be set clear for one road and also open as to the other. It follows that some one seriously and negligently blundered, and that one or both of the defendants are liable to the plaintiff for the injuries he received. The plaintiff's case was easily made. On the trial the contest devel-

oped into strenuous efforts on the part of each defendant to cast the blame for the accident upon the other.

As to the defendant the Wabash Railroad Company, there is evidence that the interlocker was at block against its train; that the signals were properly set, and that its engineer disregarded them; that its train was derailed at the derailing point; that there were marks of the wheels over the ties from the point of derailment to the Lake Shore track; that the towerman saw the Wabash train going off over the derail; that he swung his lantern violently to call the attention of its engineer, but that his warning was disregarded; that the levers in the towerhouse after the accident showed that the plant was set for the Lake Shore to pass, and was at block against the Wabash. The defendant the Wabash Railroad gave evidence tending to show that it whistled to the towerman for the signals; that the signals were given by the towerman and showed a clear track for its train; that its train was not derailed by the interlocker; that its engine and cars did not leave the rails until its engine or water tank was struck by the Lake Shore engine; and that it was well nigh impossible for the towerman to change the interlocker in so short a time from signals for its train to signals against it and in favor of the Lake Shore. Sixty-five pages of the brief for the Wabash Railroad is occupied with excerpts from the testimony and argument to sustain its claim. It makes a strong but not conclusive case. The evidence is in sharp conflict. There is sufficient evidence to sustain a verdict that each defendant was guilty of the negligence charged against it. The jury were not asked to determine whether one of the defendants was guiltless and the other guilty. Both chose to submit the case to the jury for a general verdict. There being evidence from which it can legitimately be inferred that each contributed by its negligence to the accident, the verdict must be sustained against both. This conflicting evidence was sufficient to carry to the jury the question of its negligence.

2. To hold that the Lake Shore is free from fault would be to hold either that the engineer saw the Wabash train coming and did all in his power to stop his train before the collision, or else that, having the right of way, he was under no obligation to watch for trouble on the other road. His view was clear for a long distance, and he could easily have seen, had he looked, that the Wabash engine was within prohibited territory. The establishment of these interlockers does not operate as a guaranty that the train may pass with absolute safety when the engineer sees signals for clear track. Human contrivances are not absolutely certain to avoid danger, and employés are not always careful. The use of appliances, compulsorily or voluntarily, to avoid danger, does not take away the duty of those using them to take all possible precaution to protect the lives and persons of those they have in charge. This obligation is not lessened by the adoption of mechanical devices which tend to obviate these collisions. There is evidence that the Lake Shore passenger train usually stopped to discharge or take on passengers before the engine had reached the Wabash track at the diamond or interlocker. There is evidence that had the engineer seen the Wabash train approaching, he had ample time to stop his train, which was going very slowly, and avoid a collision. He owed to his passengers the highest degree of care. A railroad track is just as much a warning of danger to a train approaching on another road as it is to a traveler upon the highway, and it is the duty of the trainmen to watch for passing trains, and, if they see danger, to use every precaution to protect their passengers by stopping their own train if it is possible to do so in time to avoid a collision. *Pratt* v. *Railway Co.*, 38 Minn. 455; *Schneider* v. *Railroad Co.*, 133 N. Y. 583.

Thompson in his Commentaries on the Law of Negligence, Vol. 2, § 1965, says upon this subject:

" Clearly, the engineer of the former train will not be justified in driving his train forward upon the crossing, if it

becomes reasonably apparent that those in charge of the train approaching on the other road are not going to stop, * * * but in such a case he must stop his own train before it reaches the crossing, if he can do so."

Under these circumstances the negligence of the defendant the Lake Shore Company became a question of fact for the jury.

3. The towerman was the joint employé of both defendants. He had the entire control of this interlocker for both roads. His negligence is attributable to both. This position does not appear to be contested by either. The argument on the part of the defendant Lake Shore is that there was no evidence upon which to base a finding that the towerman changed the signals from the Wabash road to the Lake Shore road. It is not claimed that the signals did not show a clear track to the Lake Shore. The towerman testified positively that he set the signals at block against the Wabash and to show a clear track for the Lake Shore. Counsel for the Lake Shore strenuously argue that it was impossible for the towerman to change the signals after they had once been set for the Wabash. Either the engineer of the Wabash disregarded the signals or the towerman changed the signal, or the interlocking device was defective and showed a clear track to both trains. I do not think that there is any evidence that it was defective. If the jury believed the testimony of the engineer and fireman of the Wabash, there could not well have been a change; but we cannot say that it was impossible that the towerman first saw the Wabash train and at a glance thereafter saw the Lake Shore and promptly changed the signal. The jury were the proper ones to determine this question. They had the witnesses and all the facts and circumstances before them. This question, however, is of very little importance to the Lake Shore, for whether the towerman did or did not change the signal, the duty of the engineer of its train to look for the Wabash train was the same. The duty to watch and stop its train, if the danger could have

been foreseen, is the same whatever the cause of the approach of the freight train.

4. Error is assigned on behalf of the Lake Shore in that the court refused to permit them to read to the jury the order of the railroad commissioner approving the interlocker and regulating the speed of trains crossing it. The objection to this was made by counsel for the Wabash road. The testimony conclusively shows that neither road paid any regard to the order of the commissioner of railroads fixing the speed at which their trains could cross this interlocker. A locomotive engineer of the Lake Shore road, with 34 years' experience, testified that it was the general custom of the trains upon that road to run over interlockers "just as fast as we were amind to; sometimes 15, sometimes 25, and sometimes 40 miles an hour." The evidence on the part of both roads conclusively shows that this order of the railroad commissioner was ignored. It follows that the engineer of this train on the Lake Shore road was cognizable of this custom. The order of the commissioner therefore could not have operated as any excuse on the part of the engineer of the Lake Shore to lessen his obligation to watch for approaching trains. The order was inadmissible for another reason. The Lake Shore's liability on this branch of the case depended upon the question whether, by the exercise of proper care, the engineer could have seen the approaching freight train, should have known that it was violating its signals, was liable to collide with his own train and could have stopped his train in time to avoid it. This question is unaffected by the order of the railroad commissioner prescribing the speed.

5. It is urged on behalf of the Wabash Railroad that it was not under obligation to exercise so high a degree of care, having no passengers, as was the Lake Shore road with a passenger train. We think this claim is without merit. At these crossings a freight train is as apt to collide with a passenger train as with another freight train. In both human life is at stake. Those in charge of the

freight train were therefore under obligation to exercise the same caution and care in approaching this crossing as were those in charge of the passenger train. Both train crews were under the like obligation. Each had the same opportunities for observation. Had the Wabash road complied with the order of the commissioner as to speed no collision would have occurred.

6. Both defendants made motions for a new trial on which were reargued most of the questions now before us. In addition each asked for a new trial on the ground that the verdict was excessive. We have not before us all the evidence bearing upon the question of damages. Two physicians on behalf of the defendant Wabash Road examined the plaintiff, and testified, but their testimony is not in the record. There was evidence of permanent disability and great suffering. We are entirely satisfied with the statements and conclusions of the circuit judge upon this point.

There are many other assignments of error upon the admission and rejection of testimony, upon the refusal to give requests, and upon the charge of the court. They have all had due consideration. To discuss each question would take many pages, and would not be of service to the profession. The theories of all the parties, which there was evidence to sustain, were explicitly stated by the court to the jury. The requests, so far as applicable, were given to the jury in the oral charge, and the charge very definitely explained to the jury the issues in the case and the law applicable to them. It is sufficient to say that we find no error upon the record, and the judgment is affirmed.

HOOKER, MOORE, CARPENTER, and McALVAY, JJ., concurred.